1   Kenneth M. Jones (SBN: 140358)
    kenneth_jones@gshllp.com
2   Cynthia L. Sands (SBN: 194999)
3   cynthia_sands@gshllp.com
    GONZALEZ SAGGIO & HARLAN LLP
4   3699 Wilshire Boulevard, Suite 890
5   Los Angeles, California 90010
    (213) 487-1400-Telephone
6   (213) 487-1402-Facsimile
7
8   Attorneys for Defendant Shell Pipeline Company L.P.

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  DAVID CALDERON, an individual,  )  CASE NO.: CV10-4896-R (PJWx)
                                    )
14                                  )  **STATEMENT OF**
                  Plaintiff,        )  **UNCONTROVERTED FACTS AND**
15                                  )  **CONCLUSIONS OF LAW**
                                    )
16            v.                    )
                                    )
17                                  )
                                    )
18  SHELL OIL COMPANY; SHELL        )
    PIPELINE COMPANY, LP; and       )
19  DOES 1 through 10, inclusive,   )
                                    )
20                                  )
                                    )
21                Defendants.       )
                                    )
22  _____)

23  ///

24  ///
25
26  ///

27  ///
28

The Court having granted the Motion for Summary Judgment of Shell Pipeline Company L.P. ("Shell Pipeline" or "Defendant") makes the following findings of Uncontroverted Facts and Conclusions of Law:

## STATEMENT OF UNCONTROVERTED FACTS

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 1.      Beginning in approximately January of 2003, Plaintiff became an employee of Shell Pipeline.  The Pipeliner position was an hourly certified union position subject to a collective bargaining agreement that regulated job assignments and promotions.  In or about 1994, Plaintiff was promoted to the position of Line Rider.  The promotion was based on Plaintiff's seniority pursuant to the terms of the collective bargaining agreement in effect at the time. | (Complaint ¶ 8) |
| 2.      From 1993 through 2001, Plaintiff enrolled in college courses at Golden West College and Devry Institute of Technology.  Plaintiff submitted applications for reimbursement for tuition expenses for these courses.  Plaintiff's supervisors, including Dan Colburn and Dave Lloyd, determined that the classes were related to Plaintiff's job duties, and approved reimbursement of Plaintiff's tuition expenses. In 2001, Plaintiff earned a Bachelors of Science degree from Devry.  His degree was substantially paid for by Shell Pipeline's tuition | (Lloyd Decl. ¶ 2; Exh. 1004) |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| reimbursement policy. | |
| 3.      After obtaining his B.S. Degree from Devry in 2001, Plaintiff continued his education in the MBA program in the Keller School of Management at Devry.  Plaintiff approached Coburn to request tuition reimbursement for his MBA courses. Coburn congratulated Plaintiff on earning his B.S. degree.  Coburn told Plaintiff that while obtaining an MBA would be a worthwhile endeavor, it did not directly relate to his current position as a Line Rider; thus, he could not approve Plaintiff's tuition reimbursement request. | (Jones Decl. ¶ 4; Exh. 1005) |
| 4.      At deposition Plaintiff was not aware of anyone at Shell Pipeline who received tuition reimbursement for an MBA program. | (Calderon Depo. 66:4 -16; Jones Decl., Exh. "A") |
| 5.      Though Shell Pipeline has a policy of encouraging employees to further their education, obtaining a degree does not automatically guarantee a particular job assignment or promotion for employees. The employee's educational background is considered along with other relevant factors. | (Shahan Decl. ¶ 5) |

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
CV10-4896-R (PJWx)

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 6.      Plaintiff was not told that a certain job would be available to him upon obtaining his B.S. degree. No one at Shell Pipeline told him that if he completed his degree a particular job would be waiting for him. | (Calderon Depo. 54:8 – 55:9) (Calderon Depo. 57:7 – 11) |
| 7.      In early 2006, Plaintiff's immediate supervisor, Dave Lloyd, approached Plaintiff regarding a temporary assignment as a Utility Inspector at the Carson Terminal, Southern California Pipeline facility.  He remained an hourly union employee eligible for overtime.  Lloyd felt that Plaintiff performed his job duties well. | (Lloyd Decl. ¶ 3; Exh. 1008) |
| 8.      In late 2006, Shell Pipeline's management decided to make the temporary job duties performed by Plaintiff part of a new permanent position. Pursuant to Lloyd's request, Plaintiff assisted in formulating a job title and description for this new position.  Plaintiff also assisted in preparing a job posting for the new position within the company's intranet. | (Lloyd Decl. ¶ 4; Jones Decl. ¶ 4; Exhs 1010, 1011) |
| 9.      Shell Pipeline maintains an intranet system for job postings called Open Resourcing ("OR") and Managed Open Resourcing ("MOR"). | (Shahan Decl. ¶ 4; Sears Decl. ¶ 4) |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| The newly created position was given the title Pipeline/Terminal Inspector ("PT Inspector") and was posted to OR so that all interested employees could apply. The successful applicant would report to Lloyd, the Maintenance Manager at the Carson facility. The posting for the PT Inspector specifically stated: "Anticipated assignment length 3 years." | (Lloyd Decl. ¶ 5; Exh. 1102) |
| 10. The OR posting for the PT Inspector described the job responsibilities including the following:<br><br>"Key responsibilities are to provide direct support to Carson Terminal and SoCal Pipeline maintenance, operations, and to ensure compliance for all standards that relates to local, state, federal, and company regulations, policies, and procedures. This person will be the lead liaison of all major projects between maintenance and operation personnel, project engineers, Houston CC, supervisors and managers." | (Lloyd Dec. Exh. 1102) |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| | |
| 11.     Plaintiff and several other Shell employees applied for this new position through OR. After interviews and consideration of the qualifications of all the applicants, and with Lloyd's recommendation, Plaintiff was considered the preferred candidate and was hired for the position on or about November 1, 2006. | ( Lloyd Decl. ¶ 6) |
| 12.     The PT Inspector position was a non-union staff position and Plaintiff became a staff employee. Plaintiff's duties differed from his prior position as a Line Rider.   For the year 2005- 2006 Plaintiff's base salary was approximately $62,400.  Moreover, in his new staff position Plaintiff became eligible for Performance Bonuses. | (Shahan Decl. ¶ 4; Exhs. 1102, 1051) |
| 13.     According to Shell Pipeline's criteria the PT Inspector position was a promotion from Plaintiff's previous position of Line Rider. | (Shahan Decl. ¶ 4) |
| 14.     After Plaintiff was awarded the position, a Human Resources representative sent an email to him congratulating him on his "promotion".  Other managers and employees did likewise.  In response to these congratulatory emails, Plaintiff replied | (Jones Decl. ¶ 4; Exhs. 1012, 1013) |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| stating "Thank you, Alice! >:)"; "Thanks, Steve!! I praise your wisdom and positive influence you gave me . . . I am sincerely thankful for all you have done for me." | |
| 15.    No jobs at Shell Pipeline are "permanent" in the sense that they exist in perpetuity. Jobs come and go depending on the need for work performed, reorganization, downsizing, and other considerations. When Plaintiff was first hired he signed an agreement acknowledging that he was not guaranteed a job with any Shell entity for any fixed term and his employment could end at any time for any reason. | (Jones Decl., ¶ 4; Exh. 1101; Shahan Decl. ¶ 6) |
| 16.    Beginning in the first quarter/early second quarter 2009 Shell Pipeline Supply and Distribution (S&D) initiated a global downsizing process. The process affected all regions in the U.S. Ultimately 20 positions were eliminated in the West and Gulf of Mexico Regions. Clorinda Nothstein, the Western Regional Operations Manager, headed the downsizing process in West Region with the assistance of other high level managers. | (Sears Decl. ¶ 7) |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 17.    The downsizing process was conducted in phases.   In Phase 1, the goal was to reduce the staff through attrition.  When an employee retired or transferred or otherwise terminated employment, the work for that position was to be redistributed to others to the extent possible, and the position would not be replaced.  No severance packages were to be offered under this scenario.  Phase 2 contemplated specific job eliminations and focused on non-essential positions and the future needs in the Region.  This group of employees would receive severance packages pursuant to Shell Pipeline's Severance Policy. The target dates for Phase 2 were July 2009 to December 31, 2009. | (Shahan Decl. ¶ 8; Exh. 1035) |
| 18.    In or about March 2009, Shell Pipeline entered Phase 2 of the downsizing process. Clorinda Nothstein, the Western Region Operator consulted Don Herman, the Carson/SoCal Pipeline Operations Manager, one of her direct reports, and asked him to determine which positions under her supervision at Carson Terminal were non-essential. Herman analyzed the positions under his purview for approximately two weeks.  He then notified Nothstein and HR of his recommendations.  Herman made his decisions without regard to race or age of the individuals holding those positions. | (Herman Decl. ¶ 5) |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| | |
| 19.    Ultimately, leadership within the West Region determined that eight (8) <u>positions</u> would be eliminated, including the following:<br>    •    <u>Engineering Assistant (Environmental):</u> held by Maria D. La Grass, a Hispanic, 58 years old;<br>    •    <u>Senior Administration Operations Assistant:</u> held by Kenneth R. Goldman, a Caucasian, 63 years old;<br>    •    <u>Operations Support Analyst:</u> held by Volker Leuthardt, a Caucasian, 67 years old;<br>    •    <u>Public Awareness Representative:</u> held by Dan Coburn, a Caucasian, 58 years old;<br>    •    <u>Administrative Assistant:</u> held by Meredith A. Johnson, a Caucasian, 53 years old;<br>    •    <u>Dispatcher:</u> held by Keith A. Fritz, a Caucasian, 67 year old;<br>    •    <u>Operations Lead Carson Redevelopment:</u> held by Jesus T. Meza, a Hispanic who was 54 years old at the time; and<br>    •    <u>Pipeline/Terminal Inspector:</u> held by Plaintiff. | (Sears Decl. ¶ 8) |

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
CV10-4896-R (PJWx)

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 20.     Herman determined that the PT Inspector position held by Plaintiff was non-essential for several reasons.  The position was inconsistent with the way the job duties were handled at other facilities in North America and around the world. Based upon his experiences, the inspection activities performed by the PT Inspector at Carson, especially on the Health, Safety and Environmental (HSE) side, were performed by contractors or engineers at other facilities. | (Herman Decl. ¶ 7) |
| 21.     Herman concluded that, though the PT Inspector position included some essential functions, these functions could be performed by others at the Carson facility as they were at all other similar Shell Pipeline facilities. | (Herman Decl. ¶ 7) |
| 22.     In 2009, Shell Pipeline did not employ a facility specific pipeline inspector on a permanent basis at any facility other than Carson facility – Plaintiff was the only person holding this position. Herman did not consider Plaintiff's race or age in determining that his job function was non-essential. | (Herman Decl. ¶ 6) |
| 23.     In May 2009, Herman told Plaintiff that his position as PT Inspector was being eliminated | (Calderon Depo. 156:21-157:6; Shahan Decl. ¶ 9; Lloyd Decl. ¶ |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| effective December 31, 2009 as a result of a global downsizing effort and cost savings. Plaintiff was not offered a severance package at that time because the severance packages had not yet been completed. Shahan, Herman and Lloyd recommended that Plaintiff immediately start posting on OR so that he could find another position. Shahan took a special interest in assisting Plaintiff in finding a new position. She informed him of available openings before they were posted and gave him interviewing tips. Herman and Lloyd also gave Plaintiff advice to assist him in landing another job within the company. | 10; Herman Decl. ¶ 12) |
| 24. From May to October 2009, Plaintiff posted for five positions in MOR:<br><br>      H & S Advisor (Carson): posted May 8, 2009. There were five applicants. Plaintiff and two others were selected for an interview. Plaintiff did not have the required experience. A Caucasian female, aged 45 to 50, was selected. | (Gonzalez-Dompke Decl. ¶ 2, ¶ 4) |
|       Trader in Development (San Diego): posted July 2, 2009. There were nine applicants. Plaintiff was not selected for an | (Yell Decl. ¶ 2, ¶4; Olmen Decl. ¶ 2, ¶ 4) |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| interview because he lacked gas and power trading experience.  The successful applicant was a Caucasian in his mid-20's and was already performing the job in San Diego. | |
|      Terminal Operator (Seattle):  posted on July 30, 2009.  Plaintiff was alerted of this position and was interviewed.  He gave the decision makers the impression that he lacked enthusiasm for the job and was not interested in relocating to Seattle.  The position was filled by a Caucasian Terminal Operator in his mid 40's who was performing the job in California who was willing to relocate to Seattle. | (Wilkinson Decl. ¶ 2, ¶ 4; Exh. 1024) |
|      Facility Engineer and Area Manager:  These two positions were posted on October 30, 2009 but were later withdrawn.  No one was interviewed or hired. | (J. Dompke Decl. ¶ 2, ¶ 4 ) |
| 25.    Shell Pipeline has an equal opportunity and anti-harassment policy prohibiting illegal discrimination on the basis of race, age and other protected characteristics.  Moreover, Shell maintains a Global Compliance Helpline wherein an employee | (Sears Decl. ¶ 9; Exhs. 1079, 1080) |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| can anonymously report a complaint 24 hours a day, 365 days a year.  When a complaint is received, it is referred to HR for investigation.  These investigations are strictly confidential and HR usually does not reveal the identity of the complaining party. | |
| 26.     On December 1, 2009, Plaintiff called in an internal complaint to the Helpline and sent a formal complaint letter to Shell Legal, Ethics and Compliance.  Plaintiff's complaint alleged race and age discrimination as well as nepotism within the Carson facility concerning the elimination of his job assignment and management's failure to aid him in obtaining another position.  Plaintiff specifically targeted Carson's local management team including Herman, Lloyd and Shahan.  Since Shahan was one of the targets of the complaint, she could <u>not</u> conduct the investigation.  Therefore, Jared Sears, a senior HR advisor then stationed in Houston, Texas, was assigned the investigation. | (Sears Decl. ¶ 3, ¶ 10) |
| 27.     Sears investigated Plaintiff's complaints.  He reviewed Plaintiff's written complaint and interviewed Plaintiff for several hours over the | (Sears Decls. ¶ 11-14; Exh. 1031) |

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
CV10-4896-R (PJWx)

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| course of three days. Sears also interviewed 11 additional individuals concerning Plaintiff's allegations. Sears completed his investigation by the end of December 2009 and prepared a written summary of his findings. Based upon his investigation, he found no evidence to corroborate Plaintiff's allegations of age and race discrimination and nepotism. | |
| 28. On December 9, 2009, at the request of Herman, Tom Eikmeier, West Region Northern California Terminal Manager, suggested to Plaintiff that he apply for one of the two operator positions in Eikmeier's region in Stockton and Martinez, California. Herman assisted in arranging an interview for Plaintiff with Eikmeier. Plaintiff did <u>not</u> apply for these openings because he was unwilling to relocate to the Stockton area. | (Sears Decl., ¶ 13; Herman Decl., ¶ 14; Calderon Depo., 204:23-207:14) |
| 29. As Plaintiff's severance date of December 31, 2009 approached, Plaintiff had not yet obtained an alternative position. Shell Pipeline's management agreed to extend his severance date to January 31, 2010, to allow him to apply for the two Operator positions at the Signal Hill and Van Nuys facilities which were posting to MOR on | (Shahan Decl. ¶ 13; Exh. 1054) |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| December 29, 2009. Thereafter, Plaintiff applied for and was selected to interview for these positions. Plaintiff contacted Shahan and informed her that his interviews for the operator positions were on January 28, and requested an extension of his severance package deadline to February 15, 2010. Shahan told Plaintiff that the extension was granted but after February 15 his job would no longer exist, and he would have to use his accrued vacation time to remain eligible for posting to MOR and OR. | |
| 30.    Plaintiff was not successful in obtaining any of the four Operator positions ultimately filled. One of the positions was filled by Victor Claudio, a Hispanic, in his late 40's, who was an experienced terminal operator. The decision makers for those positions did not deny Plaintiff a job because of his race or age or because of Plaintiff's internal complaint for discrimination. | (Rodriguez Decl. ¶ 4; Yates Decl. ¶ 4) |
| 31.    Plaintiff had two severance packages available to him. Under the standard Severance Plan he would receive $13,865.40 based upon his years of experience, and would be eligible to apply for open positions with Shell Pipeline. If Plaintiff accepted the Special Severance Plan, he would be | (Shahan Decl. ¶ 14) |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| paid the sum of $85,965.49 in exchange for a release of all claims. Plaintiff refused the Special Severance Plan offer. | |
| 32.  Plaintiff's December 1, 2009 internal complaint was the <u>first</u> time that he complained to his employer about discrimination. | (Calderon Depo. 128:3 – 129:23) |
| 33.  The decision to eliminate the PT Inspection position was made by Shell Pipeline in March 2009, nine months *before* Plaintiff's internal complaint. | (Shahan Decl. ¶ 7; Sears Decl. ¶ 7; Herman Decl. ¶ 5) |
| 34.  Plaintiff first filed a complaint for discrimination and retaliation with the Department of Fair Housing and Employment on February 22, 2010. | (Complaint ¶ 26) |
| 35.  Plaintiff claims that the alleged discriminatory conduct by Shell Pipeline management took place over decades beginning in 1990 or 1991. Plaintiff kept a record of alleged acts of discrimination for decades; however, he did not complain to Shell Pipeline about these alleged discriminatory acts until December 1, 2009. | (Calderon Depo. 127:6 – 130:9) |

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
CV10-4896-R (PJWx)

| **UNCONTROVERTED FACT** | **SUPPORTING EVIDENCE** |
|---|---|
| 36.     After obtaining his B.S. degree in 2001, and not being selected for promotion, Plaintiff compiled a detailed written report of promotions he believed he had been denied because of discrimination and nepotism within Shell Pipeline.  Plaintiff presented his report to the EEOC. | (Jones Decl. ¶ 2, Exh. "B"; Calderon Depo. 132:13 – 133:24; 137:2 - 20; 138) |

## CONCLUSIONS OF LAW

1.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a).

2.     Summary judgment is appropriate when the pleadings, discovery, disclosure materials on file and affidavits demonstrate that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Sprint PCS Assets, L.L.C. v. City of Palos Verdes Estates*, 583 F.3d 716, 720 (9th Cir. 2009) (citing Fed. R. Civ. P. 56(c)).

3.     The scope of each party's substantive burden in this was delineated in *Guz v. Bechtel National, Inc.,* 24 Cal.4th 317, 100 Cal.Rptr.2d 352 (2000), Plaintiff must first make a prima facie case of discrimination.  It is then Defendant's burden to produce evidence to establish a genuine issue that Plaintiff's termination, or other adverse employment action, was made for legitimate nondiscriminatory reasons.  If such a showing is made, there is no presumption of discrimination, and it is Plaintiff's burden to produce, "substantive responsive evidence," that Defendant's proffered reasons are pretext and to produce any other evidence of discriminatory motive."

4.     Here Plaintiff has alleged discrimination based on his age and race relating to Defendant's terminating his employment, not hiring his for open positions

once he learned of his termination, and not promoting him during his time working for Defendant.

5.      Plaintiff has not established a prima facie case of discrimination because he has not presented any evidence that he was treated differently than other similarly situated employees.

6.      Beginning in the first quarter/early second quarter 2009 Shell Pipeline Supply and Distribution (S&D) initiated a global downsizing process.    The process affected all regions in the United States.  A total of 20 positions were eliminated in the United States.   Eight positions were eliminated in the Western Region of Shell Pipeline S&D including the position of Pipeline/Terminal ("PT") Inspector at the Carson facility, which Plaintiff held.

7.      The Western Region selected the position of PT Inspector as one for elimination for the following legitimate business reasons:

(a)      The PT Inspector position was inconsistent with staffing at other similar facilities;

(b)      The PT Inspector position was created in order to assist the engineering group with inspections.  But at the time of Phase Two of the global downsizing, the engineering group at the Carson facility no longer needed assistance with inspections;

(c)      The job duties of the PT Inspector position were performed by contractors or engineering staff at all other similar locations;

(d)      The position of PT Inspector did not exist at any other location in the world; and,

(e)      The job duties of the PT Inspector position at the Carson facility were disbursed among non-eliminated positions consistent with other similar facilities.

8.      Moreover, Plaintiff has not shown that the PT Inspector is similar to other positions not eliminated, such that the Court could meaningfully compare

Plaintiff's treatment to those of others similarly situated. That said, even if Plaintiff had made a prima facie showing, Defendant's proffered reasons for the termination - - a company-wide reduction in workforce affecting other employees and the non-existence of Plaintiff's position at other facilities - - are a legitimate nondiscriminatory reasons for Defendant's actions.

9. Plaintiff has not countered Defendant's preferred legitimate nondiscriminatory business reasons with any substantive evidence showing that the reasons are pretextual or any other evidence of discrimination relating to his termination. Pursuant to *Horsford v. Board of Trustees of California State University*, 132 Cal.App.4th 359, 33 Cal.Rptr.3d 644 (2005), Plaintiff, "cannot prevail merely by showing that personnel decisions negatively impacted a protected group."

10. As to Plaintiff's claim of discrimination for not being hired for open positions, the Court finds that Plaintiff likely has stated prima facie evidence of discrimination. However, as recognized in *Fragante v. Honolulu*, 888 F2d 591 (9th Cir. 1989) Defendant's reason for not hiring Plaintiff, that other, more qualified candidates were hired, is a legitimate, nondiscriminatory reason. After Plaintiff learned his job as PT Inspector was being eliminated effective December 31, 2009, Plaintiff applied for eight positions which he did not obtain:

(a) H & S Advisor (Carson): posted May 8, 2009. There were five applicants. Plaintiff and two others were selected for an interview. Plaintiff did not have the required experience. A Caucasian female, aged 45 to 50, was selected.

(b) Trader in Development (San Diego): posted July 2, 2009. There were nine applicants. Plaintiff was not selected for an interview because he lacked gas and power trading experience. The successful applicant was a Caucasian in his mid-20's and was already performing the job in San Diego.

(c) Terminal Operator (Seattle): posted on July 30, 2009. Plaintiff was alerted of this position and was interviewed. He gave the decision makers the impression that he lacked enthusiasm for the job and was not interested in relocating

to Seattle. The position was filled by a Caucasian Terminal Operator in his mid 40's who was performing the job in California who was willing to relocate to Seattle.

(d) <u>Facility Engineer and Area Manager:</u> These two positions were posted on October 30, 2009, but were later withdrawn. No one was interviewed or hired.

(e) <u>Terminal Operator in Van Nuys and Signal (4 positions):</u> Originally two positions were posted December 29, 2009, but four positions were filled. Plaintiff was one of six to eight applicants for each position. Plaintiff was interviewed for each position, but was not selected because he lacked experience in quality control terminal management system experience, including how to deal with meter proving and meter repairs. The four positions were filled by two Hispanic males, one in his 30's and one in his 40's, one Vietnamese male in his 20's, and one Caucasian in his late 30's or early 40's. All four successful candidates were more qualified than Plaintiff.

11. Plaintiff has not presented any evidence, beyond his own speculation, that he was actually more qualified than those hired, or any other evidence suggesting that discriminatory reasons resulted in him not being offered the positions. The Court fails to see any relevance to Defendant's hiring of the younger Tan Nguyen over the older Tim Serpa for a terminal operative position at Signal Hill.

12. Mr. Serpa is not a party to this action, and this Court has not been presented with evidence of any claim of age discrimination on his part, nor has Plaintiff claimed to be substantially similarly qualified to Mr. Serpa. And precisely because of his qualifications, Mr. Serpa was offered the same position in Van Nuys. Further, the purportedly contradictory explanations to which Plaintiff cites are merely issues of semantics or comparisons of two discrete situations taken out of context. They are not contradictory explanations producing genuine issues of material fact.

13. Finally, as to Plaintiff's failure to promote claims. While Plaintiff has stated a prima facie case, he has not presented any evidence rebutting Defendant's

legitimate non-discriminatory reason for not promoting Plaintiff into various positions to which he applied over the years. The evidence adduced indicates that Plaintiff's degrees did not qualify him for the jobs he sought and that other candidates were more qualified.

14.    Plaintiff did not produce any direct evidence of discrimination. Nor does he point to a single instance in which he applied for a job and a less qualified candidate who was younger or of different race was given a job.

15.    The bottom line is that while Plaintiff claims that less qualified candidates were offered jobs for which he applied, the only evidence he provides is his own opinion. And his own testimony reveals that he was not actually aware of the other candidates' qualifications. As such, Plaintiff's opinion, which had little evidentiary value to begin with, is completely lacking in any foundation. Pursuant to *Martin v. Lockheed Missiles & Space Company*, 29 Cal.App.4th 1718 (1994), Plaintiff's presentation simply is not sufficient evidence to carry his burden.

16.    To prove retaliation in violation of the FEHA, Plaintiff must show (1) he engaged in a "protected activity," (2) the employer subjected him to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 32 Cal.Rptr. 3d 436 (2005). To prove wrongful termination in violation of public policy, the Plaintiff must show a "nexus" between the employee's protected activity and the employee's discharge. *Turner v. Anheuser-Busch, Inc.* 7 Cal.4th 1238, 1258-1259, 32 Cal.Rptr. 2d 223 (1994).

17.    The Court finds no causal connection between the decision to eliminate the PT Inspector position at the Carson facility in March 2009 or the failure to hire Plaintiff for open positions, and Plaintiff's December 1, 2009 complaint alleging race and age discrimination. The fundamental flaw in Plaintiff's claims is that the decision to terminate him was made before Plaintiff engaged in any protected activity. The Court finds that:

(a)    Eight days after Plaintiff's report to the Helpline, on December 9, 2009, at the request of Don Herman, Tom Eikmeier, West Region Northern California Terminal Manager, suggested to Plaintiff that he apply for one of two Terminal Operator positions in Eikmeier's region.  Herman assisted in arranging an interview between Eikmeier and Plaintiff.

(b)    Plaintiff limited his ability to remain employed with Shell Pipeline by restricting his search to Southern California only.  Though Plaintiff attended the interview with Eikmeier, he did not apply for the two Terminal Operator openings because he was unwilling to relocate to Northern California.

(c)    After Plaintiff lodged his complaints of age and race discrimination, Shell Pipeline's management agreed to extend Plaintiff's severance date from December 31, 2009 to January 31, 2010, then to February 15, 2010, to allow him to apply and interview for two Terminal Operator positions at the Signal Hill and Van Nuys facilities.  Shell Pipeline management allowed Plaintiff to use his accrued vacation time to remain eligible for posting to MOR and OR after February 15, 2010.

(d)    The hiring of Victor Claudio into the open terminal operator position ahead of Plaintiff was not, "retaliation" as Mr. Claudio knew most, if not all, of the quality controls and testing involved.

(e)    Shell Pipeline's actions taken after Plaintiff's internal complaint are wholly inconsistent with retaliatory animus and do not raise any inference of pretext.

18.    Plaintiff's claim for discrimination for failing to promote him due to his race/national origin or age is limited by the statute of limitations set forth in *California Government Code* §12960 and §12965(b).  Those statutes require that an administrative complaint be filed with the DFEH within one year of the date the alleged unlawful practice occurred.  Plaintiff did not file his first DFEH complaint until February 22, 2010. Thus, Plaintiff's claims for failure to promote arising before

February 22, 2009 are not only without substantive merit as explained above, such claims are also time-barred.

19.     Even if Plaintiff's claim had substantive merit -- and they do not – the continuing violations doctrine does not revive Plaintiff's stale claims.  This doctrine arises when an employee raises a claim based on conduct that occurred in part outside the limitations period.  In order for Plaintiff to recover under this doctrine, he must prove that (1) Shell Pipeline's alleged discriminatory acts predating the statutory period are sufficiently similar in kind to those within the statutory period; (2) Shell Pipeline's acts occurred with reasonable frequency, meaning they were recurring rather than isolated; and (3) the purported discriminatory acts have not "acquired a degree of permanence."   In the context of the continuing violation doctrine, "permanence" means employer conduct that (1) triggers an employee's awareness of and duty to assert his or her rights; and (2) makes clear that continued adverse treatment by the employer is to be expected.  *Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798, 111 Cal.Rptr.2d 87 (2001); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 32 Cal.Rptr.3d 436 (2005).

20.     The Court finds that after obtaining his B.S. degree in 2001, and not being selected for promotion, Plaintiff's was aware of his duty to assert his rights, and the claimed discriminatory conduct had gained permanence.  However, Plaintiff did not file his claim with the DFEH until February 2010. Therefore, the continuing violations doctrine is not applicable.

21.     Further, the continuing violations doctrine is not applicable here because different decision makers were involved in the promotion decisions.  *Morgan v. Regents of University of California*, 88 Cal. App. 4th 52, 65 – 66, 100 Cal.Rptr. 2d 652 (2000).   Moreover, the Supreme Court has held that the failure to promote an employee is a discrete act of discrimination and, therefore, does not give rise to application of the "continuing violations" doctrine.  *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 S.Ct. 2061 (2002).

22.     Pursuant to the foregoing, Plaintiff has not carried his burden on any of his claims.  Accordingly, judgment shall be entered in Defendant Shell Pipeline Company, LP's favor and against Plaintiff David Calderon consistent herewith.


Dated:    July 11, 2011                           _____
                                                            Manuel L. Real
                                                    United States District Judge